## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 07 2015, 10:26 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

William Gooden
Mt. Vernon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Miller
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of E.M. (minor child) and

L.M.

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

May 7, 2015

Court of Appeals Case No. 65A01-1408-JT-343

Appeal from the Posey Circuit Court

The Honorable James M. Redwine, Judge

Cause No. 65C01-1309-JT-156

**Mathias, Judge.**

[1] L.M.'s ("Mother") parental rights to minor child E.M. were terminated. Mother appeals and argues that the Posey Circuit Court's order terminating her parental rights is not supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] L.M. gave birth to E.M. on May 14, 2012. Mother failed to obtain proper pre-natal care, and she used illegal substances during her pregnancy. Mother admitted that she used methamphetamine and synthetic marijuana within a week of E.M.'s birth. E.M. was removed from Mother's care within days of her birth.

[4] On June 1, 2012, E.M. was adjudicated a child in need of services ("CHINS"), and the trial court found:

> On or about May 16, 2012, [Mother] admitted to using methamphetamine and K2 (synthetic marijuana) within a week of the child's birth. The mother did not obtain proper prenatal care for the child during her pregnancy and also admitted to using drugs during her pregnancy including: methamphetamine. . . . The mother's substance abuse evidences an inability to properly care for the child. The mother . . . [has] failed to protect and supervise said child or to provide appropriate shelter or a safe environment for said child placing said child in danger of physical or mental harm. The child needs care, treatment and/or rehabilitation that [she] would not receive but for the Court's intervention.

Ex. Vol., DCS Ex. 2. Mother was ordered to participate in services including that she must refrain from use of illegal drugs, submit to random drug screens and attend all scheduled visitations.

[5] Throughout the proceedings, Mother continued to use marijuana and methamphetamine. She also missed or refused numerous drug screens. Mother was assessed by Southwestern Behavioral Healthcare on January 9, 2013. She was diagnosed with polysubstance dependency, borderline personality disorder, and post-traumatic stress disorder. To help Mother learn skills and tools necessary to maintain sobriety, the evaluator recommended that Mother complete twenty-five therapy sessions and substance abuse group therapy. Mother was unsuccessfully discharged for failure to attend the recommended sessions.

[6] However, in September 2013, Mother returned to Southwestern after DCS made another referral, and she agreed to participate in group therapy. Mother's attendance in group therapy was inconsistent, and she missed six sessions in October 2013. Therefore, Mother was unsuccessfully discharged for a second time. Mother's therapist does not believe that Mother has a current ability to remain sober.

[7] From January 2013 to January 2014, Mother missed thirty scheduled visitations with E.M. After Mother tested positive for methamphetamine and amphetamine in September 2013, her visits with E.M. went from "monitored" to fully supervised. During visitation, Mother's behavior was not always

appropriate. Mother occasionally exhibited anger and used inappropriate language in E.M.'s presence.

[8] On September 23, 2013, the DCS filed its petition to terminate Mother's parental rights. E.M. has not been in Mother's care since birth but has been placed with a foster family who would like to adopt her.

[9] In early January 2014, Mother missed two drug screens. On January 14, 2014, Mother refused to take a drug screen. Therefore, on January 21, 2014, Mother's family case manager met with Mother to discuss the importance of participating in court-ordered services. Mother submitted to a drug screen and signed an agreement stating that if she failed to participate in services, the services would be terminated. On January 27, 2014, DCS suspended Mother's participation in services because she missed another drug screen.

[10] The trial court held hearings on the DCS's petition to terminate Mother's parental rights on March 31, 2014, April 11, 2014, and April 15, 2014. Mother has not had a positive drug screen since September 2013, but she also missed or refused several drug screens between October 2013 and January 2014. Mother failed to complete substance abuse treatment and indicated that she was not willing to participate in treatment. Mother's family case manager testified that termination of Mother's parental rights was in E.M.'s best interests. However, the guardian ad litem believed that Mother's parental rights should not be terminated because Mother had not had an opportunity to develop a significant relationship with E.M.

[11] The trial court took the matter under advisement after the April 15, 2014, hearing. On June 9, 2014, the court granted DCS's motion to reopen the evidence. Therefore, an additional fact-finding hearing was held on July 25, 2014.

[12] The court heard evidence that on June 5, 2014, Mother was arrested and charged with Class D felony possession of chemical reagents or precursors with intent to manufacture a controlled substance and Class D felony neglect of a dependent.[1] Mother was incarcerated on these charges on the date of the hearing. The DCS also submitted evidence from the guardian ad litem who changed his recommendation and concluded that continuation of Mother's relationship with E.M. poses a threat to her well-being.

[13] The trial court terminated Mother's parental rights to E.M. at the July 25, 2014, hearing[2] and later issued the following order:

> 4. The child was removed from the mother's care more than two years ago.
>
> 5. The child has never been in the mother's custody since birth.
>
> 6. The Department has offered services to the mother which she has not taken advantage of. During the pending CHINS matter, mother has had positive screens for methamphetamine. Mother has missed random drug screens. Mother has also refused to screen on occasion.

---

[1] Mother was living with her fiancée and his three children.

[2] E.M.'s biological father voluntarily relinquished his parental rights.

7. Mother has not shown any ability to remedy the situation which brought about the intervention of the Department, which was her frequent use of impairing substances. This use of substances resulted in her inability to care for her child.

8. Despite not having her own child in her care, [Mother] did [] reside with the children of her boyfriend James Johnson until recently. Those children reported to the Guardian Ad Litem that drug use was taking place in the home, that [Mother] was not appropriately caring for them, and that they would go without food.

9. The substance use and inability to care for a child demonstrated by mother at the outset of the CHINS matter continues, and there is reasonably probability that the drug use and inability to care for the child will continue in the future.

10. The situation which brought about intervention of the Department more than two (2) years ago, even after a great amount of services and effort by the Department, has not been alleviated.

11. The child has been out of the care of both parents for more than six (6) months following a dispositional decree, and for more than fifteen (15) months of the most recent twenty-two (22) months.

12. There is a reasonable probably that the conditions that resulted in the child's removal and continued placement outside of mother's care will not be remedied.

13. The child should have an opportunity to have a life on its own, and adoption is a reasonable and satisfactory plan for the child.

14. For these reasons, and based on the Mother's history as outlined throughout the findings above, termination of mother's parental rights is the permanency plan which is in the best interests of the child.

Appellee's App. pp. 1-2. Mother now appeals. Additional facts will be provided as necessary.

## Standard of Review

[14] We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made." *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

## Discussion and Decision

[15] "The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests "must be subordinated

to the child's interests" in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009).

[16] Indiana Code section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

> (2) The petition must allege:
>
> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[17] DCS must prove "each and every element" by clear and convincing evidence. *G.Y.*, 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. Clear and convincing evidence need not establish that the continued custody of the parents is wholly inadequate for the child's very survival. *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. *Id.* If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[18] Mother argues that the evidence presented at the termination hearing established that she was "making progress on her drug usage problem." Appellant's Br. at 9. Therefore, from Mother's perspective, the DCS failed to prove by clear and convincing evidence a reasonable probability exists that the conditions that led to E.M.'s removal from Mother's care will not be remedied.[3]

[19] Mother has a long history of illegal drug use and admitted to using methamphetamine while she was pregnant with E.M. In the months after E.M. was removed from Mother's care, Mother tested positive for methamphetamine three times and also for oxycodone. Mother's most recent positive screen for methamphetamine occurred on September 17, 2013. Between E.M.'s removal in May 2012 and September 2013, Mother also tested positive for marijuana five times.

[20] Although Mother has not tested positive for illegal substances since September 2013, and has passed several drug screens, Mother has also missed or refused to take numerous drug screens. DCS refused to continue to provide services to Mother after she failed to show for three drug screens in January 2014 and refused to submit to a drug screen on January 14, 2014. On January 23, 2014, Mother signed an agreement that stated that services, including visitation with

---

[3] Mother does not separately address the factors in Indiana Code section 31-35-2-4(b)2(B)(i) and (ii) and the trial court concluded that the DCS met its burden of proving both subsections. Because the statute is written in the disjunctive, the DCS needed to prove only one of the requirements of subsection (b)(2)(B). *In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999). Also, Mother does not challenge the trial court's conclusion that termination of her parental rights was in E.M.'s best interests. Mother therefore waived that issue on appeal. *See* Ind. App. R. 46(A)(8)(a). Given the constitutional rights at issue in termination proceedings, we will consider whether the DCS established that termination was in E.M.'s best interests.

E.M., would be terminated if she failed to submit to drug screens. Yet, just four days later, she failed to appear for a drug screen.

[21] Throughout these proceedings, Mother did not make a sincere attempt to address her long-standing substance abuse problems. DCS gave Mother two referrals for treatment through Southwestern Behavioral Healthcare. After the intake appointment for the first referral, Mother refused to participate in recommended treatment and was unsuccessfully discharged. In September 2013, after the second referral, Mother agreed to participate in group therapy. However, her attendance was inconsistent, and she missed six sessions in October 2013. Therefore, Mother was unsuccessfully discharged for a second time. Importantly, Mother's therapist does not believe that Mother has a current ability to remain sober.

[22] Finally, in June 2014, Mother was charged with Class D felony possession of chemical reagents or precursors with intent to manufacture a controlled substance and Class D felony neglect of a dependent. She was incarcerated on these charges on the date of the final fact-finding hearing.

[23] As a result of the charges, the guardian ad litem interviewed Mother's fiancée's children, who lived with Mother. The children reported that drug use was occurring in the home, and Mother and her fiancée often locked themselves in their room away from the children.

[24]  This evidence is sufficient to support the trial court's conclusion that a reasonable probability exists that the conditions that led to E.M.'s removal from Mother's care will not be remedied.

[25]  Finally, we consider whether termination of Mother's parental rights is in E.M.'s best interests. In assessing what is in the best interests of a child, courts should look beyond the factors identified by the DCS and consider the totality of the evidence. *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* Courts also must consider a parent's fitness to care for a child at the time of the termination hearing, taking into consideration any evidence of changed conditions. *Id.* at 287.

[26]  Also, parent's habitual patterns of conduct must be evaluated, including consideration of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* "A parent's historical inability to provide a suitable environment, along with the parent's current inability to do the same, supports finding termination of parental rights is in the best interests of the children." *Id.* at 290. Finally, "a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010).

E.M. was removed from Mother within days of her birth and had never been placed in Mother's care. Mother has struggled with substance abuse for many years and has not demonstrated that she is willing to address that issue. In addition to missing or refusing numerous drug screens, Mother missed approximately thirty scheduled visitations with E.M. On the date of the final fact-finding hearing, Mother was incarcerated. Importantly, Mother's family case manager believes that termination of Mother's parental rights to E.M. is in E.M.'s best interests. Also, after criminal charges were filed against Mother and after interviewing Mother's fiancée's children, the guardian ad litem agreed that a reasonable probability exists that the conditions that led to E.M.'s removal from Mother's home will not be remedied.

For all of these reasons, we conclude that the DCS proved by clear and convincing evidence the required statutory factors enumerated in Indiana Code section 31-35-2-4(b). We therefore affirm the trial court's order terminating Mother's parental rights to E.M.

Affirmed.

May, J., and Robb, J., concur.